[Civ. No. 39164. First Dist., Div. One. Mar. 10, 1977.]

TIDEWATER OIL COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
WILLIAM MEDEIROS et al., Respondents.

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen and James R. Libien for Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Sedgwick, Detert, Moran & Arnold, Francis V. Clifford and Leonard & Thomas for Respondents.

OPINION

**MOLINARI, P. J.**—By this petition for writ of review petitioner, Tidewater Oil Company (hereinafter Tidewater), seeks to annul the decision of the Workers' Compensation Appeals Board (hereinafter the Board) determining that Tidewater must contribute towards an award made to William G. Medeiros on the basis that Tidewater is liable for such contribution as a predecessor in interest of Phillips Petroleum Company (hereinafter Phillips), Medeiros' last employer, pursuant to the provisions of Labor Code section 5500.5, subdivisions (a) and (d).[1]

Subdivision (a) of section 5500.5[2] permits an employee claiming liability for occupational disease or cumulative injury to proceed only against the employers who employed him during a period of five years immediately preceding either the date of injury or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first. Liability in such cases is limited to such employers and is not apportioned to prior years.

---

[1] All statutory references hereinafter made are to the Labor Code.

[2] At all times pertinent to this proceeding subdivision (a) of section 5500.5 provided, in applicable part, as follows:

"(a) Liability for occupational disease or cumulative injury shall be limited to those employers who employed the employee during a period of five years immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first. If, based upon all the evidence presented, the appeals board or referee finds the existence of cumulative injury or occupational disease, liability for such cumulative injury or occupational disease shall not be apportioned to prior years except as provided in subdivision (d); . . ."

The limitation of liability provided for in subdivision (a) is inapplicable where, as provided in subdivision (d) of section 5500.5,[3] the employment exposing the employee to the hazards of the claimed occupational disease or cumulative injury was for more than five years with the same employer or its predecessors in interest. In such circumstances liability is *extended* to all insurers who insured the worker's compensation liability of such employer during the entire period of the employee's exposure with such employer or its predecessor in interest. Accordingly, in this situation the liability for such injury or occupational disease is apportioned among the employers liable under the provisions of subdivision (a) and those liable for the prior years as provided in subdivision (d).

In the present case Medeiros was awarded benefits for an industrial injury to his right lower extremity and vascular system attributed to his continuous employment at an oil refinery at Avon, California, from October 21, 1946, to January 7, 1972.

From October 21, 1946, through July 14, 1966, the refinery was owned and operated by Tidewater and from July 15, 1966, through January 7, 1972, it was owned and operated by Phillips. The refinery was acquired by Phillips from Tidewater, pursuant to an agreement of sale which provided for the outright transfer of the refinery property from Tidewater to Phillips. Under the agreement Phillips assumed certain indebtednesses which were secured by mortgages on some of the property conveyed and Phillips assumed Tidewater's obligations to process crude oil for others. The agreement required Phillips "take over" at the pay they were then receiving all employees who performed the majority of their services "in connection with the assets, properties, contracts and operations" transferred to it by Tidewater. Pursuant to the provisions of the agreement the employees were to have the same rights to severance pay and seniority as they would have had if Tidewater had

---

[3]At all times pertinent to this proceeding subdivision (d) of section 5500.5 provided, in applicable part, as follows:

"(d) If the employment exposing the employee to the hazards of the claimed occupational disease or cumulative injury was for more than five years with the same employer, or its predecessors in interest, the limitation of liability to the last five years of employment as set forth in subdivision (a) shall be inapplicable. Liability in such circumstances shall extend to all insurers who insure the workmen's compensation liability of such employer, during the entire period of the employee's exposure with such employer, or its predecessors in interest. The respective contributions of such insurers shall be in proportion to employment during their respective periods of coverage. As used in this subdivision, 'insurer' includes an employer who during any period.of the employee's exposure was self-insured or legally uninsured. . . ."

continued operating the refinery. The agreement provided for the transfer of the retirement credits of employees and stated that it was the intent of the parties that the employees would receive not less than the benefits which would be payable under Tidewater's retirement plan.

It was further provided in the agreement that Tidewater was required to maintain operations up to the transfer date. Phillips, however, did not acquire any permanent right to use Tidewater's trade names or marks nor did it assume any obligations under special contracts such as stock option agreements.

The record is unclear as to what occurred on the transfer date but the parties in their briefs have assumed that insofar as the employees at the refinery were concerned they continued to work for Phillips as they had while employed by Tidewater. It is conceded by Phillips, moreover, that it intended to take over all of Tidewater's obligations to its employees.

In his petition for compensation benefits Medeiros elected to proceed solely against Phillips. Upon the application of Phillips the Board ordered that Tidewater and its insurance carrier be joined as defendants upon the claim that the liability for Medeiros' injury should be apportioned as provided in section 5500.5, subdivision (d).[4]

The workers' compensation judge (formerly referee) in her "Findings and Order in Re Contribution Among Defendants," found that Tidewater was not a "predecessor in interest" for the purposes of section 5500.5, subdivision (d), and that, therefore, neither Tidewater nor its insurance carrier was liable to Phillips for indemnity or contribution for Medeiros' compensation award. Upon a grant of reconsideration the Board found that Tidewater was a predecessor in interest for the purposes of section 5500.5, subdivision (d). Tidewater's petition for reconsideration of the Board's decision was denied and upon petition of Tidewater we granted a writ of review.

The sole issue involved is whether Tidewater is a predecessor in interest of Phillips within the meaning of section 5500.5, subdivision (d). If Tidewater is not such a predecessor in interest then Phillips must bear

---

[4]Upon the joinder the defendants to these proceedings became Phillips, Tidewater and their respective insurance carriers. Tidewater was self-insured from October 21, 1946, through December 31, 1965, and thereafter, until July 14, 1966, was insured by the Travelers Insurance Company. Phillips was insured from July 15, 1966, through January 31, 1968, by Hartford Accident & Indemnity Company and thereafter was self-insured.

the entire liability for the worker's compensation recovery of Medeiros under the provisions of section 5500.5, subdivision (a).

Tidewater's primary argument is that the Board is obligated to construe the term "predecessor in interest" according to California law of general corporate principles. The thrust of this argument is that the Legislature is presumed to have been cognizant of the meaning ascribed to phrases construed in earlier judicial opinions. Tidewater then relies upon three cases construing California law in such a fashion that Phillips could not be a *successor* in interest if that law were applied. Finally, Tidewater reasons that if Phillips cannot be its successor in interest under California corporate law principles, then Tidewater cannot be Phillips' predecessor in interest for purposes of the Workers' Compensation Act.

In considering Tidewater's contentions we first observe that our research has not been able to find any California case which has defined the term "predecessor in interest." The cases relied upon by Tidewater are not in point. The case of *Pierce* v. *Riverside Mtg. Securities Co.,* 25 Cal.App.2d 248 [77 P.2d 226], does not define either the term "predecessor in interest" or "successor in interest" but deals with the question of liability for the debts of a corporation which sells or otherwise transfers its assets to another. *Pierce* holds that where a sale of assets is made by an old corporation to a new one and the new corporation leaves the old one with sufficient assets to pay its debts a creditor of the seller cannot collect his debt from the buyer. (At p. 257.)

The case of *Kloberdanz* v. *Joy Manufacturing Company,* 288 F.Supp. 817, is to the same effect and holds that where a corporation continues to exist after the sale of most of its assets to another corporation the purchasing corporation is not a mere continuation of the selling corporation so as to render the purchasing corporation liable for the selling corporation's torts. (At pp. 820-821.)

The case of *Ortiz* v. *South Bend Lathe,* 46 Cal.App.3d 842 [120 Cal.Rptr. 556], was decided subsequent to the enactment of subdivisions (a) and (d) of section 5500.5. Accordingly, the Legislature could not have relied on this case. In any event, *Ortiz* does not define the term "predecessor in interest." The holding of *Ortiz* is that a corporation acquiring the assets, including the trade name, of another corporation was not liable for injuries caused by a defective punch press manufactured by the selling corporation where the selling and purchasing corporations were completely separate and distinct entities both before

and after sale and notwithstanding that the purchasing corporation had also purchased the assets of a third corporation which had assumed the manufacturer's liabilities. (At pp. 846-848.)

In the present case Phillips purchased some of Tidewater's assets, i.e., the Avon refinery. Tidewater, as a result of the sale, did not go out of existence. It did not merge with Phillips nor was Phillips a continuation of Tidewater. We are not concerned here with corporate law dealing with liability for the debts or torts of a selling corporation by a purchasing corporation, but with whether one corporation is the predecessor in interest of another within the meaning of section 5500.5, subdivision (d).

■ In interpreting section 5500.5, subdivision (d), we are guided by the fundamental principle of statutory construction stated in *Select Base Materials* v. *Board of Equal.*, 51 Cal.2d 640, 645 [335 P.2d 672], as follows: "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of legislative purpose. [Citation.] Such purpose will not be sacrificed to a literal construction of any part of the act. [Citations.]"

As a further guide in our interpretation of section 5500.5, subdivision (d), which was enacted in 1973 (Stats. 1973, ch. 1024, § 4, p. 2032), we take cognizance of a legislative purpose to codify an equitable but administratively efficient system of apportionment among employers and their insurance carriers for payment of compensation benefits to persons industrially disabled due to cumulative and occupational injuries. The attempt to codify such a system can best be understood in the light of the history of past attempts to achieve the same result which find their genesis in *Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 82 [172 P.2d 884].

In *Colonial* the Supreme Court held that where a worker has sustained an industrial injury over a number of years in a number of different jobs, he is entitled to select one or more of the successive employers or successive insurance carriers to obtain his entire recovery; and that the employer or carrier selected by the worker could then petition for

apportionment of the worker's recovery among the other employers and carriers. (29 Cal.2d at p. 82.)

In 1951 section 5500.5 was enacted by the Legislature. (Stats. 1951, ch. 1741, § 1, p. 4154.) Section 5500.5 is essentially, as originally enacted, a legislative codification of the principles announced in the *Colonial* decision. (See *Harrison* v. *Workmen's Comp. Appeals Bd.* (1974) 44 Cal.App.3d 197, 199 [118 Cal.Rptr. 508]; Swezey, *Disease as Industrial Injury in California,* 7 Santa Clara Law. 205, 220.)

The *Colonial* decision continued to maintain its vitality after the passage of section 5500.5. Numerous cases subsequent to the enactment of section 5500.5 have held the principles announced in *Colonial* to be controlling. (See *Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 65 [45 Cal.Rptr. 5, 403 P.2d 133]; *Royal Globe Ins. Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 60, 64 [45 Cal.Rptr. 1, 403 P.2d 129]; *Fireman's Fund Indem. Co.* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 831, 835 [250 P.2d 148]; *Cypress Ins. Co.* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 196, 201 [71 Cal.Rptr. 915]; cf. *State of California* v. *Ind. Acc. Com. (Walters),* (1957) 48 Cal.2d 365 [310 P.2d 7] (upholding constitutionality of provision allowing reimbursement to the employer from the subsequent injuries fund under § 5500.5 and discussing the proper procedure for an applicant to secure a recovery against the subsequent injuries fund under the section); *State of California* v. *Ind. Acc. Com. (Erickson),* (1957) 48 Cal.2d 355, 359 [310 P.2d 1] (discussing procedure under § 5500.5 and upholding the statute not to apply retroactively);[5] *State of Calif.* v. *Industrial Acc. Com. (Costello),* (1957) 49 Cal.2d 354 [317 P.2d 8] (applying *Walters* rule to allow reimbursement of insurance carrier from subsequent injuries fund and upholding constitutionality of reimbursement provisions as applied); and *Brown* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 903, 912 [98 Cal.Rptr. 96].)

In 1973 subdivision (a) to section 5500.5 was enacted (Stats. 1973, ch. 1024, § 4, p. 2032), changing for the first time *Colonial's* procedural system of apportionment. In effect, subdivision (a) operates to *limit* apportionment to employers and carriers who had responsibility for coverage of the worker "during a period of five years immediately

---

[5] Immediately after the ruling in *State of California* v. *Ind. Acc. Com. (Erickson)* the Legislature amended the statute to give it retroactive application. (See *Jenkins* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 259, 262, fn. 1 [107 Cal.Rptr. 130].)

preceding either the date of injury . . . or the last date on which the employee was employed . . . whichever occurs first."

The limitation is subject to the caveat of subdivision (d), however, which retains the *Colonial* system of permitting the worker to select the employer or carrier, so long as the prior employer was a "predecessor in interest" to the injured party's last employer.

In discussing the legislative purpose for the enactment of subdivision (a) to section 5500.5 in 1973, the appellate court in *Harrison* observed that the purpose was to alleviate the difficulties encountered by the parties in complying with the requirements of former section 5500.5 "whereby employees and their attorneys were frequently compelled to expend much time, effort and money in tracing the applicant's employment history over the entire course of his adult life." (44 Cal.App.3d at p. 200.) The court noted that "The statute thus ameliorates the procedural morass faced by the board and the parties in multiple defendant cases." (At p. 201.)

In *Harrison* the court was called upon to determine whether subdivision (a) should be given retroactive application. (The court held that it should be applied retroactively.) No question of interpretation of the caveat contained in subdivision (d) was raised or discussed by the *Harrison* court. Nor has any appellate court, since *Harrison,* issued a published decision construing any of the provisions of subdivision (d). The board has been called upon to apply that subdivision in a number of differing fact situations, none involving the definition of "predecessor in interest." (See *Van Asselt* v. *Workers' Comp. Appeals Bd.,* 41 Cal.Comp. Cases 1.)

In *P. Lorillard Co.* v. *Peper* (E.D. Mo.) 65 F. 597, 598 (affd. 86 F. 956; cert. den., 171 U.S. 690 [43 L.Ed. 1179, 19 S.Ct. 886]), it was observed that, in common acceptation, "predecessor" means " 'one who goes before or precedes another in a given state, position, or office,' and does not necessarily express any relation of legal privity" and that who is a "predecessor" is a question of law and fact. (See *Balkins* v. *County of Los Angeles,* 81 Cal.App.2d 42, 48 [183 P.2d 137] (holding that a "predecessor in interest" is not a privy).)

In Black's Law Dictionary (4th ed. 1951) a "predecessor" is defined as "One who goes or has gone before; the correlative of 'successor.' . . . Applied to a body politic or corporate, in the same sense as 'ancestor' is

applied to a natural person." *Black* defines a "successor" as "One that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; one who takes the place of another by succession."

■ It is clear that under the foregoing definition as applied to the instant case Tidewater is clearly a "predecessor" of Phillips and that Phillips, in turn, is a "successor" of Tidewater. Tidewater is also a "predecessor in interest" of Phillips. Tidewater clearly and without doubt had an interest in the subject refinery to which Phillips succeeded.

■ The word "interest" in its ordinary signification is broad enough to include every species of property right; it is broader and more comprehensive than the word "title"; and it may be used as synonymous with "estate" or "title," or it may be used to denote something less than an estate or title. (*Estate of Baldwin,* 21 Cal.2d 586, 591 [134 P.2d 259]; *Brown* v. *Sweet,* 95 Cal.App. 117, 124 [272 P. 614].) Accordingly, by the employment of the word "interest" in its broad sense the Legislature manifested an intent that it should include every species of property right. (*Estate of Baldwin, supra.*)

■ In the light of these definitions Tidewater was clearly Phillips' "predecessor in interest." The agreement of sale of the refinery from Tidewater to Phillips discloses that there was an outright transfer of the refinery property and that this transfer included the assets, properties, contracts, and operations of Tidewater.

We observe that although the term "predecessor in interest" has not been defined by our courts, the term "successor in interest" has been judicially determined. Accordingly, because "predecessor" is the correlative of "successor" we apprehend that the construction given to the term "successor in interest" is equally applicable to the term "predecessor in interest." Our courts have interpreted the term "successor in interest" in a broad sense rather than in a narrow and technical sense. Thus, in *Baldwin* a receiver succeeding to the right of possession of a legacy was held to be a "successor in interest" of any "heir, devisee or legatee." (21 Cal.2d at p. 591.) In *Call* v. *Thunderbird Mortgage Co.,* 58 Cal.2d 542, 550 [25 Cal.Rptr. 265, 375 P.2d 169], a "successor in interest" of a judgment debtor was held to be one who has acquired (or succeeded to) the interest of the judgment debtor in real property. (See also *Bateman* v. *Kellogg,* 59 Cal.App. 464, 476-477 [211 P. 46].)

It is apparent from a reading of subdivisions (a) and (d) of section 5500.5 that, with respect to an employee whose employment exposed him to the claimed occupational disease or cumulative injury where his employment was with the same employer or its predecessor in interest for more than five years, the Legislature intended that the apportionment and contribution rule articulated in *Colonial* would remain viable. As already noted, by virtue of the 1973 amendment apportionment and contribution was limited in cases when the employment was less than five years with the same employer or its predecessor in interest. In such case liability is limited to those employers who employed the employee during a period of five years immediately preceding the date of injury or on the last date on which the employee was employed in an occupation exposing him to the hazards of the occupational disease or injury.

Tidewater makes two supplemental arguments. The first is that the Board's application of the term "predecessor in interest" is contrary to established law, specifically to the decision in *Harrison*. The second is that the Board's definition of "predecessor in interest" is a violation of due process because it "creates a new liability for the petitioner which petitioner could not reasonably anticipate prior to the Board's decision." Neither argument has merit.

As already pointed out, *Harrison* did not involve the interpretation of subdivision (d) of section 5500.5 but concerned itself solely with whether the provisions of subdivision (a) of section 5500.5 were retroactive. We observe, moreover, that Tidewater itself in its petition states that "This case is one of first impression involving the interpretation of the term 'predecessors in interest' as added to Labor Code section 5500 [*sic*] by the 1973 amendments to the Labor Code in Section 5500.5(d)."

As respects Tidewater's second argument we observe that no new liability was created by the Board's decision. Under *Colonial* and under section 5500.5 prior to the 1973 amendment Tidewater was subject to liability for Medeiros' claim. The original enactment of section 5500.5 in 1951 was declared to be constitutional. (See *State of California* v. *Ind. Acc. Com., supra,* 48 Cal.2d 365; *State of Cal.* v. *Industrial Acc. Com., supra,* 49 Cal.2d 354; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.,* 219 Cal.App.2d 634, 643-644 [33 Cal.Rptr. 442].) We do not perceive that the addition of the word "predecessor in interest" in the 1973 amendment imposed any new liability. Under the *Colonial* decision and the original enactment of section 5500.5 liability upon the basis of apportionment and contribution was fastened upon an employer. The liability of a

"predecessor in interest" under subdivision (d) of section 5500.5 clearly has reference to an employer and its injection into the statute was for the purpose of providing that in computing the five-year employment period the employment by an employer and a predecessor employer would be deemed to be the same employment. In order to make a colorable showing of a denial of due process Tidewater must show an unwarranted deprivation of an interest protected by the United States and California Constitutions. Tidewater has made no such showing, nor may it claim that it has a protected interest in the judicial construction of a question of "first impression."

Tidewater also argues that if it is found to be the predecessor in interest of Phillips, then Phillips is the successor of Tidewater by virtue of Evidence Code section 623 for purposes of any other litigation or any other subject in which the parties may become involved.

Section 623 of the Evidence Code provides: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." We fail to see the relevancy of this provision to the instant litigation. We are not concerned with any statement or conduct of Tidewater which will work the estoppel principle set forth in Evidence Code section 623 but with the meaning of "predecessor in interest" as used in section 5500.5, subdivision (d), and whether Tidewater, for purposes of apportionment and contribution under that statute, is such a predecessor. By arguing that Tidewater is such a predecessor Phillips is not making any affirmative representation that Phillips is Tidewater's successor for purposes of any other statute or any other obligation.

The order denying reconsideration is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied April 1, 1977, and petitioner's application for a hearing by the Supreme Court was denied May 5, 1977.