Filed 3/13/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| HERIBERTO PONCE et al., | C080680 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV131769) |
| v. | |
| WELLS FARGO BANK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Yolo County, Timothy F. Fall, Judge. Reversed.

United Law Center, Danny A. Barak, Stephen J. Foondos and Jonathan Sanders for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton and Jon D. Ives for Defendants and Respondents.

Plaintiffs and appellants Antonio and Imelda Aranda and their son-in-law, Heriberto Ponce, (together, Ponce and Aranda) appeal from the trial court's entry of a judgment of dismissal following an order imposing both terminating and monetary

1

sanctions against them and their attorneys under Code of Civil Procedure section 128.7.[1] The trial court found that Ponce and Aranda's complaint was presented primarily for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.  (§ 128.7, subd. (b)(1).)

On appeal, Ponce and Aranda argue that the claims asserted in their complaint were not frivolous and therefore, could not have been asserted for an improper purpose. We agree.  We therefore reverse the trial court's entry of judgment based on terminating sanctions against Ponce and Aranda and entry of monetary sanctions against Ponce and Aranda and their attorneys.

## I.  BACKGROUND

Ponce and Aranda obtained a $280,000 loan to purchase a home in Woodland (property).  The loan was secured by a deed of trust recorded on February 14, 2008, in favor of respondent and defendant Wells Fargo Bank.

Ponce and Aranda applied for a loan modification under the Home Affordable Modification Program (HAMP) in September 2009.  Ponce and Aranda successfully completed a trial period plan and were offered a permanent loan modification.  The permanent modification agreement contained several errors.  Of greatest significance, the modification agreement failed to name Ponce as a party and called for higher payments than the trial period plan, which Ponce and Aranda could not afford.  Ponce and Aranda tried to resolve these issues with Wells Fargo, without success.  Ponce and Aranda defaulted on the loan in June 2010.

Wells Fargo transferred the note and deed of trust to Consumer Solutions 3, LLC (Consumer Solutions) in November 2010.  Defendant and respondent Specialized Loan Services, LLC (Specialized) serviced the loan on behalf of Consumer Solutions.  In the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

meantime, Ponce and Aranda were still trying to work things out with Wells Fargo. One Wells Fargo representative told Ponce's wife, Alma, that they should not make further payments until the mistakes were corrected. Other representatives called Ponce demanding payment. Wells Fargo refused to accept any reduced payment, and ultimately invited Ponce and Aranda to apply for another loan modification.

Specialized recorded a notice of trustee's sale in December 2010, while Ponce and Aranda's second application was pending. A Wells Fargo representative told Ponce "not to worry about the notice because the trustee sale was scheduled by mistake." Over the next several weeks, other Wells Fargo representatives reassured Ponce and Aranda that the property would not be sold because they had been approved for a loan modification.

Despite these assurances, a trustee's sale was held on January 18, 2011, at which Residential Investments LLC (Residential Investments) acquired title to the property. A trustee's deed upon sale was recorded on March 8, 2011. On January 28, 2011, Specialized executed an assignment of deed of trust from Consumer Solutions to Residential Investments. The assignment was recorded on March 8, 2011.

A.    *Unlawful Detainer Action and Ponce I*

Residential Investments filed a complaint in unlawful detainer against plaintiffs in Yolo County Superior Court on April 1, 2011. Ponce and Aranda countered with a lawsuit of their own in Yolo County Superior Court, case No. YOSU-CVCV-2011-1120 (*Ponce I*). We have not been provided with copies of the relevant filings in *Ponce I.* However, some of those filings appear to have been presented to the trial court in connection with Wells Fargo and Specialized's motions for summary judgment or, in the alternative, summary adjudication, which were heard contemporaneously with the sanctions motions currently before us.

We have been provided with copies of the memoranda of points and authorities filed in support of the motions for summary judgment, but not the separate statements of undisputed facts or accompanying exhibits. The memoranda describe the complaint filed

3

in *Ponce I* as having been styled as follows: "Complaint for fraudulent misrepresentation; fraudulent inducement; violation of the fair debt collection practices act; predatory lending practices; breach of trust contract; RICO violations; quiet title; declaratory relief; injunctive relief; conspiracy; Rosenthal Act; and illegal foreclosure" against Wells Fargo, Specialized, Residential Investments, and others. The memoranda state that *Ponce I* was dismissed in response to an order to show cause regarding sanctions in which Ponce and Aranda were ordered to show cause " '**WHY THIS CASE SHOULD NOT BE DISMISSED WITH PREJUDICE.**' " Specifically, the memoranda state that *Ponce I* was dismissed for " 'persistent failure to comply with the CMC orders issued in this case, and for failure to show cause why the case should not be dismissed.' "

B.      *Ponce II and Ponce III*

On June 23, 2011, Residential Investments obtained a judgment for possession of the property in the unlawful detainer action. Between June 28, 2011, and December 19, 2012, Ponce and Alma filed four separate bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of California.[2] Residential Investments sought and obtained relief from automatic stay in each case.

On February 15, 2013, Ponce and Alma commenced a pro se adversary proceeding against Wells Fargo, Specialized, Residential Investments and others in case No. 12-41661 (*Ponce II*). We have not been provided with copies of the docket sheets or filings from any of the foregoing bankruptcy proceedings. However, Ponce and Aranda have asked us to take judicial notice of a motion to dismiss filed in another federal action (described momentarily), which we have done. That motion describes the adversary complaint as "almost identical" to the complaint to which the motion was directed. The

---

[2] We take judicial notice on our own motion of the dockets in each of the foregoing cases.

4

motion also indicates that Wells Fargo and Specialized filed a motion to dismiss the adversary complaint in *Ponce II,* which was set for hearing on April 29, 2013. It is not clear from the bankruptcy court's docket sheet whether the motion to dismiss was heard, and if so, what the disposition of the motion may have been. The adversary proceeding was closed on May 20, 2013.

On March 13, 2013, Ponce and Alma commenced a separate action, also pro se, in the United States District Court for the Eastern District of California in case No. 2:13-CV-0498 LKK DAD PS (*Ponce III*). The complaint alleges that Ponce applied for a HAMP modification, successfully completed a trial period plan, and was offered a permanent modification agreement containing errors, including the omission of Ponce as a party and unaffordably high monthly payments. The complaint further alleges that Ponce tried to resolve the problems with Wells Fargo, but contradictory instructions by various representatives, including an invitation to apply for another loan modification and false assurances that the property would not be sold in foreclosure while the application was pending. The complaint alleges causes of action for breach of contract, breach of implied-in-fact contract, promissory estoppel, fraud, negligent misrepresentation, negligence, violations of the Unfair Competition Law, Business and Professions Code section 17200, et seq. (UCL), and violations of Civil Code section 1632.

C.      *The Stipulation*

On March 29, 2013, plaintiffs, represented by John S. Sargetis of the United Law Center, signed a Stipulation to Hold Writ in exchange for $10,000 and the right to remain in possession of the property through May 2013. The stipulation was also signed by Alma, who lived at the property and was the most fluent English speaker in the group.

The stipulation includes a release, which reads as follows:  "In addition, Defendants [Ponce and Aranda], for themselves, their agents, invitees, joint ventures, partners, employees, and licensees release Plaintiff, its agents, including, but not limited to, American Residential Realty, predecessors in interest, successors in interest, partners,

5

or joint ventures and their officers, directors, agents, attorneys, employees and members from any and all claims, causes of action and liabilities they may possess, unknown and known, against Plaintiff and American Residential Realty, predecessors in interest or successors in interest, partners, and joint venturers and their officers, directors, agents, attorneys, partners, employees and members regarding the subject loan, Note, Deed of Trust, Foreclosure, Premises, the Separate Action [*Ponce III*], and this Unlawful Detainer Action."

The trial court apparently entered an order on the stipulation on April 2, 2013.[3]

Ponce and Alma filed a request for dismissal with prejudice of Residential Investment and another defendant, American Residential Realty, from *Ponce III* on March 29, 2013. Wells Fargo and Specialized filed a motion to dismiss *Ponce III* for failure to state a claim on April 4, 2013. Nothing in the record indicates the disposition of these motions. Ponce and Alma, now represented by Sargetis, filed a request for dismissal of *Ponce III* without prejudice on June 26, 2013. The case was dismissed without prejudice on July 8, 2013.

D.      *The Present Case (Ponce IV)*

Ponce and Aranda, represented by Sargetis, commenced the instant action against Wells Fargo and Specialized on October 3, 2013. The second amended complaint, which is the operative pleading, alleges that Ponce and Aranda successfully completed a trial period plan and were offered a permanent modification agreement that failed to name Ponce and called for unaffordably high monthly payments. The second amended complaint further alleges that Ponce and Aranda attempted to resolve the problems with Wells Fargo, but were given contradictory instructions and false reassurances that the property would not be sold in foreclosure. The second amended complaint asserts causes

---

[3] We have not been provided with a copy of the order.

of action for breach of contract, promissory estoppel, fraud, negligent misrepresentation, negligence, and violations of the UCL.

Wells Fargo and Specialized asked Ponce and Aranda to dismiss *Ponce IV* in light of the stipulation. Ponce and Aranda did not respond.

Wells Fargo and Specialized answered the second amended complaint on or about June 12, 2014. The original answer did not assert the release as an affirmative defense. Wells Fargo and Specialized amended their answer to assert the release as an affirmative defense on July 8, 2105.

During the course of discovery, Ponce and Aranda authenticated the stipulation and confirmed that they received the $10,000 payment from Residential Investments. Wells Fargo and Specialized also deposed Alma, who confirmed that the stipulation was intended to resolve the litigation regarding the property. Alma also testified that, at the time she signed the stipulation, she understood that Wells Fargo and Residential Investments were "connected." Following the first day of Alma's deposition, Wells Fargo and Specialized again asked Ponce and Aranda to dismiss the action in light of the stipulation. Ponce and Aranda indicated that they would consider the request, but did not respond further.

Wells Fargo and Specialized served motions for sanctions pursuant to section 128.7 on Ponce and Aranda on July 1, 2015, and filed them on July 27, 2015, more than 21 days later. (§ 128.7, subd. (c)(1).) The motions sought monetary and terminating sanctions on the grounds that Ponce and Aranda's "claims and legal contentions [were] not warranted by existing law and the facts, and because the action was filed for an improper purpose." Ponce and Aranda opposed the motions, arguing, as they do here, that Wells Fargo is not a predecessor in interest and Specialized is not an agent to a predecessor in interest for purposes of the stipulation. Wells Fargo and Specialized also filed motions for summary judgment or, in the alternative, summary adjudication.

7

The trial court heard argument on the motion for sanctions on September 10, 2015. In anticipation of the hearing, the trial court issued a tentative ruling dropping the summary judgment motions from the calendar for failure to comply with the statutory notice period (§ 437c, subd. (a)) and stating, with respect to the sanctions motions:

"Defendants' motions for sanctions are **GRANTED**. ([§] 128.7, subd. (b)(1).) The Stipulation to Hold W[r]it executed by plaintiffs Heriberto Ponce, Antonio Aranda, and Imelda Aranda on March 29, 2013, released Wells Fargo, as predecessor in interest, from any and all claims, causes of action, and liabilities, known or unknown, regarding the subject loan, Note, Deed of Trust, and foreclosure proceedings. (Decl. of Hunter Robinson, Exh. J.) Plaintiffs and plaintiffs' counsel, jointly and severally, shall pay monetary sanctions to Wells Fargo in the amount of $8,678.41 ([§] 128.7, subd. (d); Decl. of Thomas N. Abbott, ¶ 13.) Plaintiffs and plaintiffs' counsel, jointly and severally, shall pay monetary sanctions to [Specialized] in the amount of $16,580.44. ([§] 128.7, subd. (d); Decl. of Thomas N. Abbott, ¶ 12.) [¶] Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**. ([§] 128.7, subd. (d).)"

Following argument, the trial court adopted the tentative ruling as the order of the court. We have not been provided with the reporter's transcript or minute order of the hearing on the motion.

Ponce and Aranda filed a timely notice of appeal.

## II. DISCUSSION

Section 128.7 requires that all pleadings filed with the court be signed by an attorney of a represented party or, if the party is not represented by counsel, by the party. (§ 128.7, subd. (a).) The signing of a filed pleading constitutes a certification by the person signing it that after a reasonable inquiry, the pleading (1) is not being presented for an improper purpose; (2) contains positions that are not frivolous; (3) alleges factual matter having evidentiary support; and (4) contains denials of factual allegations having evidentiary support. (*Id.* at subd. (b).) The court, after proper statutory notice, may

8

impose sanctions upon the attorneys, law firms, or parties who have improperly certified a pleading in violation of the statute.  (*Id.* at subd. (c).)

"Under [section] 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. . . .  A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.]  In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable.  [Citation.]  A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.) Section 128.7 " 'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously.  Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way.  Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution.' " (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167-168.)

"The Legislature enacted section 128.7 based on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), as amended in 1993 [(rule 11)].  [Citations.]  Therefore, federal case law construing rule 11 is persuasive authority on the meaning of section 128.7." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 190; see also *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921 (*Optimal Markets*) [federal cases construing rule 11 are instructive for purposes of interpreting § 128.7, which is modeled on rule 11].)

"Ordinarily, a ruling on a motion for sanctions brought under section 128.7 is reviewed under a deferential abuse-of-discretion standard." (*Optimal Markets, supra,* 221 Cal.App.4th at p. 921; see *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384,

405 ["an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination"].) The standard is deferential due to "the importance of the trial court's close familiarity with the case in evaluating the potential sanctionee's litigation activity." (*Optimal Markets, supra*, at p. 926.) However, some cases call for a less deferential standard of review. For example, "where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review." (*Id.* at p. 921.) Similarly, [t]he availability of sanctions under section 128.7 in connection with undisputed facts is a question of law subject to de novo review." (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591.)

Here, the trial court's sanctions award was expressly based on section 128.7, subdivision (b)(1), which reaches claims "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." We would ordinarily review a trial court's finding that a claim was presented for an improper purpose for abuse of discretion. (*Optimal Markets*, *supra,* 221 Cal.App.4th at p. 921.) However, Ponce and Aranda also raise a legal question by arguing that, "if the attorney filed the papers at issue with a reasonably clear legal justification, no improper purpose exists." We understand Ponce and Aranda to argue that, as a matter of law, a nonfrivolous claim cannot be asserted for an improper purpose. We consider this question de novo.

A. *Frivolity*

Ponce and Aranda contend the trial court erred because a nonfrivolous argument can be made that Wells Fargo was not a "predecessor in interest" within the meaning of the stipulation. They note that Wells Fargo and Specialized were not parties to Residential Investment's unlawful detainer action, did not participate in the negotiation of the stipulation, were not named in the stipulation, and did not rely on the stipulation in their motion to dismiss *Ponce III*. They also note that the phrase "predecessor in interest"

10

has not been defined by statute and has only been judicially construed in one published case, more than forty years ago.  (See *Tidewater Oil Company v. Workers' Compensation Appeals Board* (1977) 67 Cal.App.3d 950, 959-960 (*Tidewater*) [defining the phrase "predecessor in interest," for purposes of Labor Code § 5500.5].)

Ponce and Aranda also observe that Wells Fargo, as the original beneficiary of the deed of trust, only held a security interest in the property.  (See generally *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491-1492.)  By contrast, Residential Investments, as the purchaser at the trustee's sale, succeeded to the same property interests and rights available to Ponce and Aranda, including the right to possession.  (See generally 5 Miller and Starr, Cal. Real Estate (4th ed. 2015) Deeds of Trust, § 13:267, p. 13-1148 ["The purchaser at the trustee's sale succeeds to the same property interests and rights as were available to the trustor, including the right to possession and collection of the rents"].)  Thus, Ponce and Aranda conclude that Wells Fargo and Residential Investment's interests in the property were fundamentally different.

Wells Fargo and Specialized respond that the phrase "predecessor in interest" encompasses a wide range of stakeholders, including Wells Fargo.  They note that *Tidewater* defines the phrase broadly by reference to its constituent terms.  (*Tidewater, supra,* 67 Cal.App.3d at pp. 958-959.)  Specifically, *Tidewater* defines "predecessor" as " ' "one who goes before or precedes another in a given state, position, or office," ' " adding that the term " 'does not necessarily express any relation of legal privity' and that who is a 'predecessor' is a question of law and fact." (*Id.* at p. 958.)  *Tidewater* goes on to say, "The word 'interest' in its ordinary signification is broad enough to include every species of property right; it is broader and more comprehensive than the word 'title'; and it may be used as synonymous with 'estate' or 'title' or it may be used to denote something less than an estate or title.  [Citations.]  Accordingly, by the employment of the word 'interest' in its broad sense the Legislature manifested an intent that it should

11

include every species of property right." (*Tidewater, supra,* at p. 959.) Applying this expansive definition, Wells Fargo and Specialized argue that the phrase "predecessor in interest" necessarily includes Wells Fargo.

Wells Fargo and Specialized observe that the release specifically refers to claims "regarding the subject loan, Note, [and] Deed of Trust," which would most likely be directed to Wells Fargo as the originating lender. They also observe that Ponce and Aranda's narrow definition of "predecessor in interest" would produce absurd results, as the only predecessors in interest with a possessory interest in the property were Ponce and Aranda themselves.

We need not decide whether Ponce and Aranda, on the one hand, or Wells Fargo and Specialized, on the other, have the better end of this argument. For present purposes, we need only decide whether Ponce and Aranda's interpretation of the stipulation is "indisputably without merit, either legally or factually." (*Peake v. Underwood, supra,* 227 Cal.App.4th at p. 440.) Although the trial court concluded that Wells Fargo was a "predecessor in interest" within the meaning of the stipulation, the court does not appear to have considered whether a plausible, nonfrivolous argument could be made to the contrary.

Without expressing any opinion on the merits, we conclude that a nonfrivolous argument can be made that Wells Fargo was not a "predecessor in interest" within the meaning of the stipulation. We acknowledge the dearth of authority interpreting the phrase "predecessor in interest," and note the differing interests held by Wells Fargo, as the beneficiary of the deed of trust, and Residential Investments, as the purchaser at the trustee's sale. We also note that the parties' litigation conduct was arguably inconsistent with an intent to release claims against Wells Fargo. Specifically, we note that Ponce and Aranda signed the stipulation on March 29, 2013, thereby resolving their claims against Residential Investments. Wells Fargo and Specialized moved to dismiss the complaint in *Ponce III* less than one week later, on April 4, 2013. Arguably, the motion to dismiss—

12

which does not mention the stipulation—would not have been necessary had the parties intended to release claims against Wells Fargo. (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 921 [" 'The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions' "].) We also note that Wells Fargo and Specialized did not raise the release as an affirmative defense until July 8, 2015, suggesting some degree of uncertainty as to whether or not they were entitled to claim the benefits of the stipulation. Under the circumstances, we conclude that a plausible, nonfrivolous argument can be made that Wells Fargo was not a "predecessor in interest" within the meaning of the stipulation. Having so concluded, we next consider whether the complaint may nevertheless have been presented for an improper purpose.

B.     *Improper Purpose*

As noted, the trial court's sanctions award was expressly based on section 128.7, subdivision (b)(1), which reaches claims "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ponce and Aranda do not challenge the sufficiency of the evidence to support the finding that their claims were presented primarily for an improper purpose. Instead, they argue that the nonfrivolous nature of the claims asserted in *Ponce IV* necessarily establishes their good faith. We agree.

The parties have not directed our attention to any California case directly on point.[4] In the absence of any applicable California authority, we look to federal law for guidance. (*Optimal Markets, supra,* 221 Cal.App.4th at p. 921.) The Ninth Circuit has explained that, "Rule 11 addresses two separate problems: 'first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon

---

[4] Ponce and Aranda direct our attention to *Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 41, but that case does not address the question before us.

for personal or economic harassment.' [Citation.] The plain language of Rule 11 suggests that the frivolous filings clause and the improper purposes clause are independent; that is, a signer can violate the Rule by filing a frivolous paper even though not done for an improper purpose or, conversely, a signer can violate the Rule by filing a harassing paper even though it is not frivolous on the merits. Despite the language of the Rule, we have held that the two clauses are not totally independent. In *Zaldivar* [*v. City of Los Angeles* (9th Cir. 1986) 780 F.2d 823, 828 (*Zaldivar*), overruled on other grounds by *Cooter & Gell v. Hartmarx Corp.*, *supra,* 496 U.S. at p. 399] we held that a non-frivolous *complaint* can never violate Rule 11, even if it was filed for an improper purpose. [Citation.] However, *Zaldivar* expressly left open the question whether an improper, harassing motion that is not frivolous violates the Rule." (*Aetna Life Ins. Co. v. Alla Medical Services, Inc.* (1988) 855 F.2d 1470, 1475-1476; see also *Zaldivar, supra,* 780 F.2d at p. 832 ["a defendant cannot be harassed under Rule 11 because a plaintiff files a complaint against that defendant which complies with the 'well grounded in fact and warranted by existing law' clause of the Rule"]; and see *Townsend v. Holman Consulting Co.* (9th Cir. 1991) 929 F.2d 1358, 1362 ["complaints are not filed for an improper purpose if they are non-frivolous"].)[5]

---

[5] The Ninth Circuit has recognized that "successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." (*Zaldivar, supra,* 780 F.2d at p. 832; see also *Warren v. Guelker* (9th Cir. 1994) 29 F.3d 1386, 1390 [Complaints filed in the face of previous dismissals involving the same legal issues or the same parties warrant sanctions under Rule 11].) "For a claim of harassment to be sustained on the basis of successive filings, there must exist an identity of parties involved in the successive claim, *and a clear indication that the proposition urged in the repeat claim was resolved in the earlier one*." (*Zaldivar, supra,* at p. 834, italics added.) Here, the record reveals that Ponce filed at least three prior complaints against Wells Fargo and Specialized prior to commencing the instant action. However, nothing in the record suggests that any of those complaints were adjudicated. As a result, we cannot say that the propositions urged in the present case were resolved in *Ponce I, Ponce II* or *Ponce III*, even assuming *arguendo* that there were an identity of the parties in each action.

14

Here, the sanctions motions were directed to Ponce and Aranda's second amended complaint, rather than any allegedly improper motion. Having concluded that the claims presented in the second amended complaint were nonfrivolous, we must also conclude that they were not presented for an improper purpose. (*Aetna Life Ins. Co. v. Alla Medical Services, Inc., supra,* 855 F.2d at pp. 1475-1476; *Zaldivar, supra,* 780 F.2d at p. 832; *Townsend v. Holman Consulting Co., supra,* 929 F.2d at p. 1362; see also *Sheets v. Yamaha Motors Corp.* (5th Cir. 1990) 891 F.2d 533, 538 [noting that courts have held that the filing of a complaint that is well grounded in fact and warranted by existing law cannot, as a matter of law, constitute harassment for purposes of rule 11].) Because the claims presented in the second amended complaint were nonfrivolous, and because a nonfrivolous complaint cannot be presented for an improper purpose under section 128.7, the trial court erred in granting the motion for terminating and monetary sanctions.[6]

---

[6] In light of our decision, we decline to address Ponce and Aranda's remaining argument that the trial court failed to comply with section 128.7, subdivision (e).

## III.  DISPOSITION

The judgment and the trial court's sanctions order are reversed.  Appellants Heriberto Ponce, Antonio Aranda and Imelda Aranda are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

RAYE, P. J.

/S/

MAURO, J.

16